No. 24-4095

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

BAERBEL MCKINNEY-DROBNIS; JOSEPH B. PICCOLA;
CAMILLE BERLESE, *individually and on behalf
of all others similarly situated*,

*Plaintiffs-Appellants*,

v.

MASSAGE ENVY FRANCHISING, LLC,
*a Delaware Limited Liability Company*,

*Defendant-Appellee*.

_____

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:16-cv-6450 | Hon. Maxine M. Chesney

_____

**ANSWERING BRIEF OF
MASSAGE ENVY FRANCHISING, LLC**

_____

Luanne Sacks
  lsacks@sacksandscott.com
Mike Scott
  mscott@sacksandscott.com
SACKS & SCOTT
5114 Point Fosdick Drive
Suite F, PMB 1095
Gig Harbor, WA 98335
(415) 518-3391

Kahn A. Scolnick
  kscolnick@gibsondunn.com
Matt Aidan Getz
  mgetz@gibsondun.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

*Counsel for Appellee Massage Envy Franchising, LLC*

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1, appellee Massage Envy Franchising, LLC ("MEF"), a Delaware limited liability company, states that it is wholly owned by Massage Envy, LLC, a Delaware limited liability company, which in turn is wholly owned by ME Holding Corporation, a Georgia corporation. No publicly held corporation owns 10% or more of the stock of ME Holding Corporation.

Dated:  December 23, 2024          Respectfully submitted,

/s/ Luanne Sacks
Luanne Sacks

*Counsel for Appellee Massage Envy Franchising, LLC*

i

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................. 1

JURISDICTIONAL STATEMENT ................................................. 5

ISSUES PRESENTED ..................................................................... 5

STATEMENT OF THE CASE .......................................................... 6

    A.    Plaintiffs sue MEF based on fees charged by
           franchisees. ......................................................... 6

    B.    The parties initially agree to settle the litigation. ......... 8

    C.    The initial settlement agreement is approved, but
           later vacated on appeal for further consideration
           by the district court. ........................................... 9

    D.    The parties negotiate an amended settlement
           agreement. ....................................................... 11

    E.    After the redemption window closes, MEF's
           counsel shares the final redemption value with
           class counsel. .................................................... 14

    F.    Class counsel miss the deadline to seek
           additional fees. ................................................. 18

    G.    Class counsel file an untimely fee motion. ................... 20

    H.    The district court denies the fee motion
           as untimely. ..................................................... 22

    I.    Class counsel appeal, abandoning most of the
           arguments they made below. ................................. 25

SUMMARY OF ARGUMENT ....................................................... 26

ii

STANDARD OF REVIEW ............................................................... 29

ARGUMENT .................................................................................. 29

I.  The parties negotiated an enforceable settlement agreement with a set deadline for any subsequent fee motion once MEF reported the redemption value. ................ 29

II.  Class counsel provide no excuse for their failure to comply with the amended settlement agreement's filing deadline. ......................................................... 32

    A.  MEF's counsel properly communicated the redemption value on MEF's behalf. .............................. 33

    B.  The amended settlement agreement required MEF to provide the aggregate voucher redemption value and nothing more. .......................................... 40

    C.  *De minimis* cash voucher redemptions by franchisees do not excuse class counsel's untimely fee motion. ...... 47

III.  The district court did not abuse its discretion by not addressing *de minimis* cash voucher redemptions. ............... 54

CONCLUSION .............................................................................. 58

iii

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arata v. Nu Skin Int'l, Inc.*,
96 F.3d 1265 (9th Cir. 1996)................................................56, 57

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)................................................10, 11

*Caudle v. Bristow Optical Co.*,
224 F.3d 1014 (9th Cir. 2000).................................................. 57

*CFTC v. Weintraub*,
471 U.S. 343 (1985)............................................................ 33

*De La Falaise v. Gaumont-British Picture Corp.*,
39 Cal. App. 2d 461 (1940)..................................................... 52

*Dream Palace v. Maricopa County*,
342 F. App'x 342 (9th Cir. 2009)............................................... 32

*Drummond ex rel. Drummond v. City of Anaheim*,
343 F.3d 1052 (9th Cir. 2003).................................................. 42

*Fischel v. Equitable Life Assur. Soc'y of the U.S.*,
307 F.3d 997 (9th Cir. 2002).................................................. 58

*In re Gerwer*,
253 B.R. 66 (B.A.P. 9th Cir. 2000)..........................................39, 40

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998).................................................. 56

*Helzel v. Superior Court*,
123 Cal. App. 3d 652 (1981).................................................... 49

*In re HP Inkjet Printers Litig.*,
716 F.3d 1173 (9th Cir. 2013)...............................................45, 46

iv

*Jeff D. v. Andrus,*
   899 F.2d 753 (9th Cir. 1989) ..................................................29, 42

*Estate of Jones,*
   82 Cal. App. 5th 948 (2022) ..................................................51, 52

*Lowery v. Rhapsody Int'l, Inc.,*
   75 F.4th 985 (9th Cir. 2021) ....................................................... 29

*McKinney-Drobnis v. Oreshack,*
   16 F.4th 594 (9th Cir. 2021) .............................................8, 10, 11

*Miller v. Hambrick,*
   905 F.2d 259 (9th Cir. 1990) ..................................................57, 58

*Platt Pac., Inc. v. Andelson,*
   6 Cal. 4th 307 (1993) ................................................................. 51

*Randazza v. Cox,*
   2014 WL 1407378 (D. Nev. Apr. 10, 2014) ................................ 44

*S. Cal. Edison Co. v. Lynch,*
   307 F.3d 794 (9th Cir. 2002) ....................................................... 32

*Estate of Saunders v. Comm'r,*
   745 F.3d 953 (9th Cir. 2014) ....................................................... 48

*Schwab v. Bridge,*
   27 Cal. App. 204 (1915) .............................................................. 50

*Taylor v. Johnston*
   (1975) 15 Cal.3d 130 .................................................................. 48

*In re U.S. Fin. Sec. Litig.,*
   729 F.2d 628 (9th Cir. 1984) ....................................................... 29

*United States v. 1.377 Acres of Land,*
   352 F.3d 1259 (9th Cir. 2003) ................................................29, 33

*United States v. Weinstein,*
   658 F. App'x 57 (3d Cir. 2016) ...............................................43, 44

*Viacom Int'l, Inc. v. MGA Ent., Inc.*,
    730 F. App'x 470 (9th Cir. 2018)................................................ 53

*In re Volkswagen "Clean Diesel" Mktg.,*
    *Sales Pracs. & Prods. Liab. Litig.*,
    975 F.3d 770 (9th Cir. 2020)................................................55, 56

**Statutes**

28 U.S.C. § 1712 ....................................................10, 12, 13

**Rules**

Fed. R. Civ. P. 6 .........................................................21, 24

Fed. R. Evid. 801 ........................................................ 43

**Legislative Materials**

S. Rep. 109-14 (2005)....................................................... 46

## INTRODUCTION

This case is simple. The parties negotiated a class-action settlement agreement, the district court approved it, and that agreement required class counsel to seek any additional attorneys' fees by a specific date. Class counsel missed that deadline by a month. And when counsel later sought fees anyway, they did not present any justifiable excuse for the untimely filing. So the district court denied their fee motion as untimely. That is about as uncontroversial an application of a district court's broad discretion over its docket as this Court will ever see.

That this appeal exists at all, and that it comes to the Court in convoluted form, stems from class counsel's efforts to negate the effects of their untimely filing. Instead of acknowledging the blown deadline and seeking relief in traditional excusable-neglect terms, class counsel cast about for reasons why the motion wasn't untimely from the outset. What results is a grab-bag of arguments each more implausible than the last, and each of which the district court correctly rejected.

Class counsel argued, for example, that their deadline to seek additional fees was never triggered. The agreement required counsel

to bring their motion ten days after Massage Envy Franchising, LLC ("MEF") provided the total value of redeemed vouchers. Yet after MEF provided that information, class counsel did nothing for weeks. And once they realized they had missed the deadline, class counsel took the position that the agreement implicitly forbade MEF from communicating the redemption value through its counsel of record. That's wrong as a matter of the agreement's text, not to mention centuries of practice. MEF, like all limited liability companies, can act only through its agents, including the attorneys who represent it. MEF thus satisfied its obligation under the agreement by communicating the necessary information through its counsel. There is no justification, in the contract or case law, for departing from those well-established principles of agency and legal representation—especially when, as the district court found, class counsel *specifically asked* MEF's counsel to provide the total voucher redemption value.

Class counsel next argued that MEF had to provide the redemption value in an employee's declaration. The district court rejected that argument, too, because nothing in the settlement agreement requires MEF to provide the redemption value in any

2

particular form. On appeal, class counsel argue that MEF was required to provide the redemption value in an evidentiary form that would be admissible—which it did in any event—and that such a duty should be implied because, under the Class Action Fairness Act, courts have to calculate fee awards based on coupons using the coupons' redemption rate. But that means only that courts must use actual rather than face or projected value, not that CAFA silently erects a code of evidence for how the redemption rate must be communicated.

Class counsel then turn to another argument making its first appearance in the appeal. The enormous majority of vouchers here were redeemed for goods and services at Massage Envy® franchise locations, but a few franchisees provided $8,833.22 in cash voucher redemptions. Class counsel now contend not only that those cash redemptions violate the parties' settlement agreement (they don't), but also that in doing so the franchisees breached an unstated condition precedent to class counsel's bringing the fee motion. Class counsel never raised this argument in the district court—they claimed their fee motion was "ripe for the Court's consideration," right until it was

3

denied—but it fails in any event. Conditions precedent are disfavored and must be plainly stated in a contract. The only condition precedent to the fee motion was satisfied when MEF provided the voucher redemption value. Once it did, class counsel was required to file their fee motion within ten days, and they didn't.

Finally, class counsel argue that the district court abused its discretion when it did not *sua sponte* take some unspecified action, which they did not request below and still do not articulate now, to "address" the few cash redemptions. It's not clear whether or how class counsel believe the district court should have disturbed the settlement over the cash redemption of 0.08% of the vouchers, but the district court hardly abused its discretion by considering class counsel's fee motion as they requested, especially since there was neither any breach of the agreement nor any harm resulting from the *de minimis* cash redemptions.

The district court rightly denied the motion as untimely. The Court should affirm.

4

## JURISDICTIONAL STATEMENT

MEF agrees with class counsel's statement about the district court's and this Court's jurisdiction and the timeliness of this appeal. AOB 1-2.

## ISSUES PRESENTED

1. Did the district court abuse its discretion by denying as untimely a fee motion made a month after it was due under the parties' court-approved settlement agreement?

2. Did the district court err in ruling that the parties' settlement agreement permitted MEF to communicate the aggregate redeemed value of vouchers to class counsel via an email from MEF's counsel, rather than specifically requiring that the data be communicated either by an MEF employee or in a particular evidentiary form?

3. Did the cash redemption of 0.08% of distributed vouchers breach an unstated condition precedent to class counsel's fee motion and thus excuse the motion's untimely filing?

4. Did the district court abuse its discretion by not disturbing the parties' settlement agreement *sua sponte*, and absent any

request from class counsel, when informed of limited cash redemptions that did not breach the parties' agreement and did not cause any harm in any event?

## STATEMENT OF THE CASE

### A.    Plaintiffs sue MEF based on fees charged by franchisees.

MEF was a franchisor during the class period, licensing more than 1,000 independently owned and operated franchised spas nationwide that provide massages, facials, and other spa services and sell related products under the Massage Envy® brand name. ER-122; 1-SER-65. MEF does not own or operate these spas or sell products to consumers anywhere in the United States. 2-SER-454-55. Customers who visit Massage Envy® franchised locations can either buy services on a one-off basis or enter "Wellness Agreements" (i.e., membership agreements) with the franchisees, under which the customer is entitled to spa services and other benefits in exchange for a monthly fee. ER-122; 2-SER-246. MEF is never a party to these agreements between Massage Envy® franchisees and their members. 2-SER-455. MEF does not collect membership fees from members or determine

6

the amount of those fees, which are set and collected by franchisees. 2-SER-452.

Plaintiffs each signed membership agreements with franchisees. 2-SER-294-301. None has an agreement with, or paid anything to, MEF. 2-SER-453-54. But on November 4, 2016, Plaintiffs sued MEF (and not the franchisees with which they had agreements) on behalf of a nationwide class of current and former Massage Envy® members. ER-146. They alleged that class members' agreements with franchisees prohibited any increase in monthly fees in perpetuity, that franchisees had breached the membership agreements by increasing monthly fees, and that MEF was responsible for those breaches. 2-SER-430.

Plaintiffs were represented by, among other firms, Finkelstein & Krinsk, LLP, which was ultimately appointed class counsel, with Jeffrey Krinsk as lead class counsel. ER-136. This was the second time Mr. Krinsk and his law firm served as class counsel in a nationwide consumer class action against MEF challenging provisions in Wellness Agreements between franchisees and members. *See Hahn v. Massage Envy Franchising, LLC*, No. 3:12-cv-153 (S.D. Cal.). As in

7

this case, in *Hahn* MEF was represented by lead defense counsel Lu-anne Sacks. *Hahn* also was resolved by a nationwide class settlement, which was approved four months before Plaintiffs, represented by Mr. Krinsk and his firm, filed this lawsuit. *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 601 (9th Cir. 2021). Mr. Krinsk and Ms. Sacks have thus attended dozens of court appearances, mediations, deposi-tions, and status and settlement conferences, and had countless phone and in-person meetings together, on behalf of class members and MEF (respectively) over thirteen consecutive years with only a few brief hiatuses.

## B.   The parties initially agree to settle the litigation.

The parties reached an initial settlement in March 2019. ER-128, -147. In exchange for a release, MEF agreed to issue vouch-ers with at least $10 million in aggregate value to class members who submitted requests, to be apportioned according to the fee in-creases class members paid to the franchisees with whom they con-tracted. ER-150. The settlement agreement specified that the vouch-ers could be "redeemed at any [franchisee] for retail products, mas-sage sessions, enhancements, and/or facial sessions," but were not

8

"redeemable for cash, payment of monthly [membership] fees, or tips." ER-151. The vouchers were "fully transferrable, [could] be aggregated, and [expired] if not used or redeemed within 18 months" of the settlement's effective date. *Id.*

MEF also agreed to injunctive relief under which it would implement a franchise system standard requiring franchisees to adopt a template membership agreement that required at least 45 days' advance written notice before increasing a member's monthly fee. ER-151-52. The settlement agreement bound all class members to the new template membership agreement upon preliminary approval and required MEF to maintain that template membership agreement as a franchise system standard for two years thereafter. *Id.*

Finally, the settlement agreement provided that MEF would not object to class counsel's anticipated request for attorneys' fees, provided the request did not exceed $3.3 million. ER-155.

## C.   The initial settlement agreement is approved, but later vacated on appeal for further consideration by the district court.

The class overwhelmingly approved the initial settlement agreement. Of 1.7 million class members, 523 opted out and 19,

including class member Kurt Oreshack, filed objections. *Oreshack*, 16 F.4th at 601. Oreshack objected that class counsel's requested attorneys' fees were disproportionate to the class benefit because they were calculated based on the total value of vouchers to be issued to class members ($10 million). *Id*. at 600-01. He argued that the vouchers were "coupons" under the Class Action Fairness Act, such that 28 U.S.C. § 1712(a) required class counsel's fees to be calculated based on the value of vouchers class members would ultimately redeem. *Id*. at 600. Oreshack also argued that the settlement demonstrated "'subtle signs'" that class counsel may have "'allowed pursuit of their own self-interests . . . to infect the negotiations,'" including the "clear sailing" provision under which MEF agreed not to object to class counsel's request for attorneys' fees up to $3.3 million, and a "reverter" provision under which any attorneys' fees that were requested but not awarded would not be added to the settlement's class benefit. *Id*. at 607-08 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)).

The district court granted final approval of the settlement over Oreshack's objections and awarded class counsel $2,612,500 in

10

attorneys' fees. *Oreshack*, 16 F.4th at 601. Oreshack appealed, and this Court ultimately agreed that the settlement vouchers were "coupons" under CAFA and that the district court had not appropriately scrutinized the settlement for signs of class counsel's self-interest under *Bluetooth*. *Id*. at 605, 611. This Court vacated and remanded to the district court with instructions to "use the value of the redeemed vouchers as required by CAFA and to analyze the pre-certification settlement agreement with heightened scrutiny." *Id*. at 612.

### D.    The parties negotiate an amended settlement agreement.

On remand, the parties conducted an additional mediation, after which they agreed to several amendments to the settlement agreement. ER-128-32. The parties revised twelve paragraphs of the settlement agreement, including an increase in the aggregate face value of the settlement vouchers from $10 million to $11 million. *Id*. In lieu of the "clear sailing" provision, the parties agreed:

> CLASS COUNSEL intends to request that the COURT award them a FEE AND EXPENSE AWARD related to the injunctive relief value of the SETTLEMENT at the time it moves for FINAL APPROVAL of the SETTLEMENT. In no event will CLASS COUNSEL'S FEE AND EXPENSE AWARD reduce any other benefit provided to

11

the SETTLEMENT CLASS or the CLASS REPRESENT-ATIVES. **Within ten (10) days after the VOUCHER redemption period ends, MEF shall provide to CLASS COUNSEL the aggregate value of redeemed VOUCHERS. CLASS COUNSEL shall file with the COURT any additional FEE AND EXPENSE AWARD request pursuant to 28 U.S.C. § 1712 within ten (10) days after receipt of the aggregate value of redeemed VOUCHERS from MEF.**

ER-130 (emphasis added). The bolded language is the entirety of the settlement agreement's terms regarding the timing of class counsel's fee motion.

Under the agreement, then, the question of class counsel's fees is split into two stages: first, a fee motion regarding non-coupon relief (i.e., related to injunctive relief and any administrative expenses associated with securing that relief), which would be made simultaneously with the motion for final approval of the amended agreement; and, second, a subsequent fee motion, if warranted, based on the dollar value of the vouchers actually redeemed by class members as reported by MEF within ten days after the expiration of the redemption period. The parties thus ensured, per CAFA and this Court's directions, that any additional fees awarded to class counsel would reflect the redeemed rather than the nominal value of the vouchers.

12

The district court granted final approval of the amended settlement agreement on May 24, 2022. ER-102-05. It also considered class counsel's request for a total award of attorneys' fees and costs of $2,612,500 and $65,593, respectively—the same amounts the district court had awarded when approving the initial settlement agreement. 1-SER-86. Class counsel split up that request, asking the Court to award fees attributable to the settlement's non-coupon relief immediately following final approval and to defer their request for the balance of fees attributable to coupon relief until after the redemption period expired. 1-SER-90. The district court, relying on an expert's estimates of the relative value of the settlement's non-coupon and coupon benefits, awarded class counsel $938,026.22 in fees "as to the portion of the work attributable to non-coupon relief—in this instance, injunctive relief and settlement administration fees," plus $65,603.05 in expenses. ER-103-04. That award of attorneys' fees and expenses, which MEF has paid, is not at issue in this appeal.

"With respect to the portion of the attorney's fee award that is 'attributable to the award of the coupons,' see 28 U.S.C. § 1712(a)," the district court "defer[red] ruling until after the expiration of the

13

redemption period." ER-103. Judgment was entered in conjunction with the district court's final approval order (ER-101), but the district court retained jurisdiction "to assure compliance with the terms of the settlement agreement and to consider any additional request for an award of attorney's fees following the end of the coupon redemption period." ER-104.

### E.  After the redemption window closes, MEF's counsel shares the final redemption value with class counsel.

After expiration of the appellate window for the district court's final approval and non-coupon fee and cost award, MEF's counsel facilitated payment to class counsel of those fees and costs as well as Plaintiffs' incentive awards. ER-28. Shortly thereafter, MEF's counsel forwarded data to class counsel confirming the settlement administrator's email delivery of the vouchers to class members. *Id.* The only issue remaining was the final tally of voucher redemptions.

On December 7, 2023, lead class counsel Jeffrey Krinsk emailed Kahn Scolnick, counsel for MEF, asking whether MEF "received the final numbers from the settlement administrator regarding the number of settlement vouchers" and asking counsel to "please forward

14

that information to me and copy attorney Knutson on the same communication," referring to Mark Knutson, whom Mr. Krinsk had copied on the email. ER-53. In response, Mr. Scolnick explained to Mr. Krinsk that the voucher redemption period would not end until December 24, 2023, several weeks later. ER-55.

Mr. Knutson replied to Mr. Scolnick on December 11, 2023, stating that he was co-counsel for the class and asking Mr. Scolnick to send the final voucher redemption value to him when it became available because he would be "preparing an application for further award of attorney's fees (if warranted)." ER-58.

MEF's lead counsel Ms. Sacks wrote to Mr. Knutson on December 19, 2024, stating that after the December 24 voucher expiration date, "we will forward" the "total voucher redemption value" to Mr. Krinsk and Mr. Knutson "as soon as we receive it from our client, which we anticipate will be before January 5, 2024." ER-57.

Mr. Krinsk later explained that he asked Mr. Knutson to assist him with the fee motion because he had decided months earlier to close the Finkelstein & Krinsk firm at the end of the year, just before the fee motion would be due. ER-45-46, -83. Mr. Knutson agreed to

"accept an Of Counsel appointment by F&K in this matter, on an as needed basis . . . for the limited purposes of assisting in preparing" the fee motion. ER-45. Mr. Krinsk closed the Finkelstein & Krinsk offices on December 18, 2023, three weeks before the fee motion became due. ER-46, -83. As Mr. Krinsk later put it to the district court, he asked Mr. Knutson to reach out to MEF's counsel "to ensure that there was a direct line of communication between them" given the upcoming closure of Finklestein & Krinsk, explaining that he felt "very relieved" that Mr. Knutson would also receive the redemption data and be able to assist with any fee motion. ER-46.

Soon after, Mr. Krinsk apparently experienced a change of heart. On December 22, 2023, he left Ms. Sacks a lengthy voicemail, asking to speak to her about her upcoming provision of the redemption value total and "to make things easy and see what is forthcoming and not let third parties get involved in this where it's unnecessary." ER-29. Mr. Krinsk and Ms. Sacks spoke on the phone the next morning, the day before the December 24, 2023 voucher expiration date. *Id.* During their call, Mr. Krinsk adamantly instructed Ms. Sacks to send the final redemption value to him alone, excluding

16

Mr. Knutson. ER-30. Ms. Sacks reminded Mr. Krinsk that she had previously agreed to send Mr. Knutson the redemption value as well, but Mr. Krinsk was unequivocal, stating "as lead counsel I will share the information as I see fit." *Id.*

Ms. Sacks agreed, reminding Mr. Krinsk that the fee motion would be due ten days after she sent the redemption value only to him. As a courtesy, Ms. Sacks raised the fact of the New Year's holiday that would interrupt the ten days class counsel would have to prepare their fee motion and offered to discuss an extension of the deadline if Mr. Krinsk needed one. ER-30. Mr. Krinsk said he would advise if an extension was needed. *Id.* He never asked for one. ER-32.

Four days later, on December 27, 2023, Ms. Sacks complied with Mr. Krinsk's request to provide the final redemption value to him alone via an email with the subject line "Redemption Total for McKinney Settlement":

> Per your instructions on December 23, 2023, we are providing the redemption value total number to you, as lead counsel for the Class, with the understanding that you will share it with the other counsel for your clients. Through the December 24, 2023 expiration date, $2,871,544.61 in vouchers were redeemed by Massage Envy independently owned and operated franchised

17

locations for services or products. An additional $8,833.22 in voucher redemptions were paid in cash by franchised locations, despite the fact that the Settlement Agreement did not require any cash payments. Thus the total value of redeemed vouchers was $2,880,377.83.

ER-61. Mr. Krinsk did not reply. ER-31.

### F.   Class counsel miss the deadline to seek additional fees.

Under the amended settlement agreement, any fee motion was due ten days after Ms. Sacks' December 27, 2023, email providing the aggregate voucher redemption value to class counsel on behalf of MEF. ER-130. But class counsel did not file the fee motion within that time period. So on January 15, 2024—nine days after the deadline—Ms. Sacks wrote to class counsel to confirm that the deadline had passed and that MEF considered the matter closed. ER-66.

MEF's counsel heard nothing until January 17, 2024, when Mr. Knutson sent an email. ER-66. Mr. Knutson didn't take issue with the fact that Ms. Sacks, as counsel for MEF, had provided the voucher redemption value or complain about the content or format of the information she had provided. *Id.* Mr. Knutson asked Ms. Sacks only to confirm on MEF's behalf that it had fulfilled its

18

injunctive relief obligations under the settlement agreement, calling that information "necessary for the Court to properly determine if an adjustment to the fee award is warranted." *Id.* Mr. Knutson's email suggested that the district court had "bifurcated" its fee award attributable to the settlement's injunctive relief with the intention to increase that award at a later date. *Id.*

Mr. Krinsk reiterated that theory in a January 23, 2024, letter to Ms. Sacks, writing that "it clearly appears that until the period for injunctive relief under the settlement self-terminates on June 24, 2024," the fee motion would be "premature." ER-71. He also expressed that his "law practice recently experienced some upheaval as [he] transitioned to . . . semi-retirement." ER-70. And in that letter—sent over two weeks after class counsel's deadline to file the fee motion, and nearly a month after Ms. Sacks provided the redemption data— Mr. Krinsk asserted for the first time that a "formal declaration on the issue by an authorized representative of MEF" was required. *Id.*

Ms. Sacks responded on January 30, 2024, reiterating that any fee motion was due ten days after she provided the final redemption value on MEF's behalf in her December 27 email. ER-74. She

19

explained that MEF had thereby fulfilled its obligations under the settlement agreement and noted that Mr. Krinsk had never before requested a "formal declaration" as the mechanism for providing the voucher redemption amount. ER-74-75.

### G.  Class counsel file an untimely fee motion.

Without requesting relief for a late filing, class counsel moved for additional fees on February 8, 2024. In their briefing on that motion, class counsel's principal argument was that the request for fees was not untimely due to the district court's "bifurcation" of its consideration of fees attributable to the settlement's injunctive relief. 1-SER-7-8, -10-13, -30-32, -36, -38-41. Class counsel further argued that Ms. Sacks' December 27 email providing the aggregate redemption value did not trigger the deadline for the fee motion because the settlement agreement prohibited MEF from providing that value through its counsel and instead required MEF to provide it in "a declaration from a duly authorized MEF representative." ER-36. And in a footnote in their reply, class counsel suggested that their missing the deadline for the fee motion constituted "excusable neglect" under

Federal Rule of Civil Procedure 6(b)(1)(B) due to the closure of Mr. Krinsk's firm and the holiday season. ER-15.

In a declaration accompanying the late fee motion, Mr. Krinsk admitted that he had seen Ms. Sacks' December 27 email providing the voucher redemption value "at or about the date it was transmitted," but "did not necessarily focus on its importance." ER-47. At the time, he was receiving emails to his Finkelstein & Krinsk email address on his mobile phone because his desktop computer had been disassembled. *Id.* Mr. Krinsk also declared "there was no mention in the . . . body" of the email—which had a subject line reading "Redemption Total for McKinney Settlement"—"that the information contained therein . . . was intended to satisfy MEF's obligation to provide Class Counsel the 'aggregate value of redeemed Vouchers,'" and "nothing in Ms. Sack[s'] email alerted [him] that the ten (10) day period under [the amended settlement agreement] was being triggered by its mere issuance." *Id.* Lastly, Mr. Krinsk claimed that he did not believe the December 27 email was the "'final' accounting of the aggregate redemption value" because Ms. Sacks did not copy Mr. Knutson on the email as she agreed to do on December 19, before

21

the December 23 phone call on which Mr. Krinsk instructed her to send the final redemption value to him alone. *Id.*; *see* ER-29-30. Having not focused on the email, Mr. Krinsk did not forward the final redemption value to Mr. Knutson until after Ms. Sacks notified class counsel on January 15 that the fee motion deadline had passed. ER-31.

### H.    The district court denies the fee motion as untimely.

The district court denied class counsel's untimely motion. The court first rejected class counsel's lead argument that their fee motion was timely because the court had bifurcated consideration of the fee award attributable to the settlement's injunctive relief. The fee motion was due on the deadline set by the parties in the settlement agreement—ten days after MEF provided class counsel the voucher redemption value. ER-7.

Addressing class counsel's argument that the settlement agreement prohibited MEF from providing the total voucher redemption value through its counsel, the district court ruled that MEF, as a limited liability corporation, could act only through its

agents, and rejected class counsel's assertion that where the amended settlement agreement "refers to an act on the part of 'MEF,' the agent who performs the act must be someone other than 'MEF's Counsel.'" ER-9. The court determined that interpretation was not supported by the agreement's separate references to "MEF" and "MEF's Counsel": the agreement referred to "a number of acts performed or to be performed by 'MEF' during the course of the instant litigation, which acts, as a matter of law, could only be performed by a party's counsel," and referred to "MEF's Counsel" "when the identity of the individual attorneys is relevant," as when it required the settlement administrator to refer certain class member questions to counsel for the class and MEF. *Id.*

The district court also reasoned that, even if the settlement agreement were ambiguous, any ambiguity would be "readily resolved" by considering class counsel's conduct before the fee motion deadline. ER-10. As the court explained, "the record is clear that, prior to the date on which a dispute as to the timeliness of the instant motion arose, all counsel understood that MEF's Counsel would provide to Class Counsel the aggregate value of redeemed Vouchers."

23

*Id.* The district court cited class counsel's requests for MEF's counsel to send that information, including Mr. Krinsk's December 23 instruction for Ms. Sacks to send the value to him alone. ER-10-11.

The district court next rejected class counsel's argument that MEF was required to provide the aggregate redemption value in a declaration, explaining "[t]here is no provision in the Settlement Agreement setting forth the format in which the aggregate value is to be provided." ER-11. The court also observed that the parties' omission of such specific requirements appeared deliberate, insofar as the agreement specifically required MEF to submit declarations (regarding the accuracy of data provided to the settlement administrator for class notice) but did not impose comparable requirements for the redemption value. *Id.*

Finally, the district court rejected class counsel's argument in its reply that their late filing could be forgiven as excusable neglect, ruling that Federal Rule of Civil Procedure 6(b)(1)(B) applied to deadlines set by the federal rules or court order and that class counsel had not identified any case extending the rule to deadlines set by contract. ER-8.

24

## I.   Class counsel appeal, abandoning most of the arguments they made below.

Class counsel appealed the district court's order denying their fee motion. They maintain their arguments that their fee motion was timely because the amended settlement agreement did not permit MEF to provide the voucher redemption total through its counsel and that the agreement implicitly required MEF to provide the total through admissible evidence, such as business records. AOB 24-31, 32-38. Class counsel also now argue that franchisees' allowance of $8,833.22 in cash voucher redemptions violated an unstated condition precedent to the fee motion and that the district court abused its discretion by not *sua sponte* addressing the cash redemptions. *Id.* at 22-23, 29-31, 38-41.

Class counsel no longer argue that their fee motion was timely because the district court had "bifurcated" its consideration of fees attributable to the settlement's injunctive relief or that the late filing constituted excusable neglect.

## SUMMARY OF ARGUMENT

A district court does not abuse its discretion by denying as untimely a motion filed a month after the due date, especially when the party filing the late motion gives no valid excuse for its lateness. That principle is unquestionable and resolves this appeal.

None of the alternative arguments class counsel make to evade the consequences of their untimeliness provides any ground to disturb the district court's order. MEF had every right to provide class counsel the voucher redemption value through its counsel, and the district court correctly determined that the parties' settlement agreement did not require MEF to act through an agent other than its attorney. ER-10. Because this straightforward conclusion was further supported by the district court's evaluation of the parties' evidence showing they specifically intended MEF to provide the total redemption through its counsel (ER-10-11), it could be reversed only if clearly erroneous—yet it is clearly correct.

The district court was also correct that the settlement agreement did not require MEF to provide the redemption value in a sworn declaration or any other particular form. ER-11. "There is

no provision in the [agreement] setting forth the format in which the aggregate value is to be provided" and, as the district court observed, that was no accident; the agreement required declarations for unrelated aspects of settlement administration, but not for provision of the aggregate redemption value. *Id.*

Class counsel now argue that MEF was impliedly required to provide that value in an admissible form. But below, they did not argue that Ms. Sacks' email providing that value was inadmissible—nor could they, as they introduced that email and relied on it as proof of franchisees' cash redemptions. Accordingly, they have forfeited that argument on appeal. And the argument is also plainly wrong. Ms. Sacks' email has been authenticated, and the aggregate value provided therein is an admissible statement of a party opponent's authorized agent and therefore not hearsay.

Finally, class counsel argue that franchisees' allowance of cash redemptions for 0.08% of the $11 million in issued vouchers violated a condition precedent in the settlement agreement and excuses their late fee motion. Class counsel forfeited that argument, too, by failing to raise it below. And even if they had raised the argument, it would

27

be baseless. Conditions precedent are disfavored and must be plainly stated in a contract—yet nothing in the amended settlement agreement expressly or necessarily conditioned class counsel's fee motion on the total avoidance of cash voucher redemptions. In fact, nothing in the agreement prohibited cash redemptions; class members did not have a *right* to demand cash for vouchers, but nothing barred franchisees from converting the vouchers to cash if they wished. And even if cash redemptions were prohibited *and* if compliance with that rule were a condition precedent to the fee motion, $8,833.22 in cash redemptions out of $11 million in distributed vouchers is plainly immaterial and thus neither excused class counsel's untimely motion nor required the district court to address the cash redemptions when denying it.

The bottom line is that class counsel missed the deadline for their fee motion, and none of the many after-the-fact excuses they have offered warrant reversal of the district court's order denying their untimely fee motion.

28

## STANDARD OF REVIEW

A district court's denial of a motion for attorneys' fees is reviewed for an abuse of discretion, *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 991 (9th Cir. 2021); its interpretation of the express terms of a settlement agreement is reviewed de novo, *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989); and its determination of settling parties' contractual intent based on extrinsic evidence is reviewed for clear error, *In re U.S. Fin. Sec. Litig.*, 729 F.2d 628, 631-32 (9th Cir. 1984); *accord United States v. 1.377 Acres of Land*, 352 F.3d 1259, 1264-65 (9th Cir. 2003).

## ARGUMENT

I. **The parties negotiated an enforceable settlement agreement with a set deadline for any subsequent fee motion once MEF reported the redemption value.**

This is a straightforward case about enforcing time limits to which the parties agreed and which the district court approved. The parties' amended settlement agreement gave MEF ten days from the end of the voucher redemption period to report the aggregate value of redeemed vouchers. MEF complied with that deadline when its counsel sent class counsel the aggregate redeemed value, precisely

29

as class counsel had instructed. The settlement agreement also required class counsel to file any additional fee motion within ten days after receiving that information. ER-130. But class counsel missed that deadline by a full month. So the district court denied the motion as untimely. Nothing about that decision is remotely controversial or subject to second-guessing on appeal.

The parties agree that the voucher redemption period ended on December 24, 2023. ER-7. The parties also agree that MEF was thus required to provide class counsel the aggregate value of redeemed settlement vouchers by January 3, 2024. MEF did so on December 27, 2023, by Ms. Sacks' email. As the district court explained, "the record is clear that, prior to the date on which a dispute as to the timeliness of the [fee motion] arose, all counsel understood that MEF's Counsel would provide to Class Counsel the aggregate value of redeemed Vouchers" after receiving that value from MEF, and would do so on MEF's behalf. ER-10.

The district court's conclusion was premised on the following facts. On December 27, 2023, MEF's counsel, Ms. Sacks, sent an email to lead class counsel, Mr. Krinsk, with a subject line reading

30

"Redemption Total for McKinney Settlement," stating that through the end of the redemption period, "\$2,871,544.61 in vouchers were redeemed . . . for services or products," that "[a]n additional \$8,833.22 in voucher redemptions were paid in cash by franchised locations," and that therefore "the total value of redeemed vouchers was \$2,880,377.83." ER-61. Only four days earlier, Ms. Sacks and Mr. Krinsk had discussed that this email would be forthcoming, and Mr. Krinsk acknowledges that he "remember[s] seeing attorney Sacks' December 27, 2023, email at or about the date it was transmitted." ER-47.

MEF, through its counsel, thereby satisfied its obligation to provide the aggregate value of redeemed vouchers to class counsel within ten days of the end of the redemption period. As a result, class counsel was required to file the fee motion, if at all, within ten days after December 27, 2023. Yet class counsel filed the fee motion on February 8, 2024, "significantly more than 10 days after December 27, 2023." ER-7.

These facts are dispositive. Because class counsel filed the fee motion a month after they were required to do so, the district court

31

properly denied that motion as untimely. *E.g., Dream Palace v. Maricopa County*, 342 F. App'x 342, 344 (9th Cir. 2009); *see also S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 807 (9th Cir. 2002) ("District courts have 'inherent power' to control their dockets.").

## II. Class counsel provide no excuse for their failure to comply with the amended settlement agreement's filing deadline.

As they did below, class counsel dedicate their brief to a search for any valid excuse for missing their deadline to seek additional fees. But that search comes up empty. MEF satisfied its duty to communicate the redemption value via its counsel—and class counsel's belated insistence on a communication from an MEF employee ignores both foundational principles of agency and practical realities. Nothing in the parties' settlement agreement required that data to be in any particular form, and class counsel's efforts to conjure such a duty find no support in the agreement's text. Nor does anything in the agreement forbid franchisees from voluntarily offering cash for vouchers—much less explicitly make perfect compliance with that supposed requirement a condition precedent that could excuse class counsel's untimely filing. These arguments are distractions, and

32

poor ones at that, from the indisputable untimeliness of class counsel's motion.

### A.    MEF's counsel properly communicated the redemption value on MEF's behalf.

The district court correctly concluded that MEF fulfilled its obligation under the amended settlement agreement to provide the aggregate redemption value within ten days of the end of the voucher redemption period when its counsel of record, Ms. Sacks, emailed the value to class counsel on December 27, 2023. Because that determination was based on both the plain terms of the agreement and the district court's review of extrinsic evidence—and because it was not clearly erroneous and, in fact, is obviously correct—this Court should affirm. *1.377 Acres of Land*, 352 F.3d at 1264-65.

As they did below, class counsel press the argument that because the settlement agreement imposed an obligation on "MEF," it required "*MEF itself*" to report the redemption data. *E.g.*, AOB 31 (emphasis added). That makes no sense. For one thing, an LLC can't do anything "itself"; it must act through its managers, employees, and agents. *CFTC v. Weintraub*, 471 U.S. 343, 348 (1985). Class

counsel aren't forthright about who in their view could have rightfully reported the data, but presumably they recognize that an MEF employee or officer could have done the reporting. Right from the start, therefore, not even class counsel take their theory seriously—they recognize that a contract requiring an LLC to do something necessarily accounts for the fact that the LLC will comply with the contract through those people who work for or represent it.

And that is the key point, as the district court recognized: attorneys *every day* speak on behalf of their clients within the scope of their representation as a matter of course and necessity. Ms. Sacks, for instance, has spoken for MEF in litigation filed by class counsel, including in correspondence with Mr. Krinsk, for well over a decade. As the district court concluded, nothing in the parties' settlement agreement or the record suggests that the parties intended to depart from the long and consistent history of Ms. Sacks' speaking on behalf of MEF, or the broader reality of attorneys' speaking for their clients in litigation, solely for the purpose of MEF's provision of the aggregate redemption value.

34

The theory class counsel advance would have stunning conse-
quences. Settlement agreements routinely require corporate entities
to take (or refrain from taking) certain steps. Suppose an agreement
requires Company X to issue an apology—has Company X breached
the agreement if it directs its public-relations agent to put out a press
release? Or suppose an agreement requires Company Y to seek dis-
missal by a certain date—is Company Y vulnerable if it files that mo-
tion through its attorneys rather than *pro se*? Or take an agreement
requiring Company Z to communicate each year whether it's received
any offers to buy the business—if Company Z's counsel sends the an-
nual communication on its behalf, can it be haled into court? All of
that is unthinkable.

But the consequences wouldn't stop there. Judicial orders, like
private settlements, regularly require corporate entities to do things.
And the attorneys who represent those corporate clients, at the cli-
ents' direction, regularly carry out those required actions—forward-
ing discovery materials, enforcing protective materials, even provid-
ing payment pursuant to judgments. No authority anywhere suggests
every one of those actions is vulnerable to attack whenever the other

35

side wants to speculate (*see* AOB 28-29) about the attorneys' authorization to act on their client's behalf.

Class counsel's argument is especially untenable given the communications between them and MEF's counsel. As the district court explained, even if the settlement agreement "could be considered ambiguous" on this issue, "the record is clear that, prior to the date on which a dispute as to the timeliness of the [fee motion] arose, all counsel understood that MEF's Counsel would provide to Class Counsel the aggregate value of redeemed Vouchers." ER-10. For example, Mr. Krinsk "himself asked MEF's Counsel to send that information to him" when he asked MEF's counsel to "please forward" the "final numbers" regarding "settlement vouchers redeemed by class members." *Id.*, citing ER-55 (Mr. Krinsk's email). Ms. Sacks responded that she would "forward that information to [class counsel] as soon as we receive it from our client" (*id.*, citing ER-57 (Ms. Sacks' email)), and Mr. Krinsk declared that he was "buoyed by" Ms. Sacks' response. ER-46. When Ms. Sacks informed Mr. Krinsk that she would soon receive "the final numbers" from MEF during the December 23 call, he specifically instructed her to "just send the final

36

redemption numbers to him" as "lead counsel." ER-11, citing ER-29-30 (Ms. Sacks declaration).

After Ms. Sacks provided that information on behalf of MEF and, weeks later, alerted class counsel to the fact that they missed the fee motion deadline, class counsel's initial response made no objection to her communicating with them on MEF's behalf (as she has done for 12 years). ER-66. To the contrary, class counsel *asked her to do so again*, asking her to confirm "as one of the counsel for Massage Envy Franchising, LLC," that MEF has "fulfilled it[s] injunctive relief obligations" under the settlement agreement. *Id*.

Class counsel does not address the district court's finding that the parties intended Ms. Sacks to provide the redemption value on MEF's behalf. Instead, they repeat their argument that the settlement agreement prohibited her from doing so because it separately defined the terms "MEF" and "MEF's Counsel," such that the agreement's requirement that "MEF shall provide to Class Counsel the aggregate value of redeemed Vouchers" "cannot be reasonably interpreted as permitting substitute performance by MEF's Counsel." AOB 27. The district court correctly rejected that argument. ER-9.

37

As the court explained, class counsel put too much weight on the "MEF's Counsel" definition. Implicit in their argument is that "MEF's Counsel" wouldn't have been defined if the parties had intended, consistent with centuries of legal practice, for attorneys to perform obligations on behalf of their clients. But in fact, "MEF's Counsel" was defined because, *in addition to* steps that counsel would take on behalf of their clients, counsel themselves had a role to play. The district court explained as much, pointing out that the agreement refers to "'Class Counsel' and 'MEF's Counsel' when the identity of the individual attorneys is relevant," as when it requires the settlement administrator to refer requests from class members for advice beyond merely ministerial information "to Class Counsel and MEF's Counsel." ER-9. So there is no surplusage or any other feature of the agreement to support class counsel's unusual reading.

On appeal, class counsel assert that they "do[] not contend that MEF was forever prohibited from conferring upon MEF's Counsel the authority to provide the [aggregate value of redeemed vouchers] data to Class Counsel." AOB 28 n.5. But they then transition to an even bolder argument, speculating that Ms. Sacks "ha[d] no inherent

authority" to commit an act that affected MEF's substantive rights, "such as bind[ing] a client to pay an amount in settlement absent the client's prior knowledge and express authorization," and "the express terms and provisions of the Settlement and ASA did not bestow such authority upon MEF Counsel, and none should be implied." *Id.* at 27-28 & n.5.

That argument makes no sense. It was not necessary for the settlement agreement to bestow authority on MEF's counsel to act on MEF's behalf, or to "imply" such authority now. Ms. Sacks, MEF's counsel of record throughout this case, had *actual* authority to communicate with Mr. Krinsk on behalf of her client, just as she has had since 2012. So class counsel's roaming discussion of unauthorized legal practice or the circumstances required for *apparent* (i.e., not actual) agency (AOB 27) are beside the point.

Class counsel cite no cases supporting their argument that MEF was required to provide the redemption value through an agent other than its counsel. They cite *In re Gerwer*, 253 B.R. 66, 73 (B.A.P. 9th Cir. 2000), for instance, for the proposition that the language of a contract governs its interpretation, if the language is clear and

39

explicit and does not involve an absurdity. AOB 15. That is correct, and the court in *Gerwer* affirmed a bankruptcy court's refusal to impose obligations not found on the face of the contract at issue (253 B.R. at 72-73)—just as this Court should affirm the district court's refusal to adopt class counsel's argument that the amended settlement agreement impliedly prohibited MEF from providing the redemption value through its counsel of record.

Because Ms. Sacks had actual authority to provide the aggregate redemption value to class counsel on MEF's behalf; because nothing in the settlement agreement evinces any intent to depart from that settled rule of legal practice; and because, to the contrary, the parties *agreed* that Ms. Sacks would be the one forwarding the redemption data, the district court's rejection of class counsel's implausible argument should be affirmed.

## B.    The amended settlement agreement required MEF to provide the aggregate voucher redemption value and nothing more.

The parties' settlement agreement required MEF to provide "the aggregate value of redeemed vouchers" (ER-130, capitalization altered) and, as the district court observed, "[t]here is no provision

40

in the [agreement] setting forth the format in which the aggregate value is to be provided." ER-11. MEF therefore satisfied its obligations under the agreement when its counsel provided the aggregate value via email.

Below, class counsel argued that MEF was required to provide the aggregate value in a sworn declaration. ER-36, -70. The district court rejected that argument, noting that the omission of any such requirement in the settlement agreement "appears deliberate, as the parties to the [agreement] clearly knew how to require a declaration when they desired to do so," citing two examples in which the agreement expressly required MEF to provide a declaration regarding the collection and accuracy of data for class notice. ER-11; 1-SER-138-39.

Class counsel have now tweaked their argument. Instead of demanding a sworn declaration, in their opening brief they demand that the redemption data have been reported in "a manner and form evidentiarily admissible." AOB 13. They characterize Ms. Sacks' December 27, 2023 email providing the redemption value as "unauthenticated, and thus [in an] inadmissible evidentiary form." *Id.* at 21. Counsel's argument fails for three reasons.

41

*First*, class counsel never objected below that Ms. Sacks' email could not be authenticated or was otherwise inadmissible. Indeed, counsel themselves offered the email as evidence and relied on it to demonstrate that some franchisees paid $8,833.22 in exchange for settlement vouchers. ER-18, -61; *accord* AOB 12 (Ms. Sacks' email "constituted an admission that ME Franchisees had redeemed Vouchers in exchange for cash"). Having failed to object to the email's authenticity below, and having themselves introduced the email as evidence and relying on it as such ever since, class counsel cannot now argue that the email was inadmissible and thus failed to fulfill a supposed contractual obligation. *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 n.5 (9th Cir. 2003).

*Second*, the argument is meritless anyway. Just as nothing in the settlement agreement required the redemption data to be reported via a "sworn declaration"—a point class counsel now concede—so too nothing in the agreement required the redemption data to be reported via "admissible evidence." Courts can't read into contracts language that isn't there, especially when a contract is so specific with respect to other requirements. *Jeff D. v. Andrus*, 899 F.2d

42

753, 758 (9th Cir. 1989). If class counsel desired a declaration swearing out the aggregate redemption value or any other specific form of the reported data, they would have had to negotiate for it in the amended settlement agreement.

*Third*, and in any event, there is no dispute regarding the admissibility of the voucher redemption value stated in Ms. Sacks' email. The email was authenticated as a communication from Ms. Sacks to Mr. Krinsk by their respective sworn declarations, without dispute. ER-30-31, -46-47. Nor was the redemption value stated in the email hearsay, as class counsel assert for the first time on appeal—it was the statement of a party opponent made by an agent authorized to make that statement. Fed. R. Evid. 801(d)(2).

Class counsel rely on inapposite authority. They cite *United States v. Weinstein*, 658 F. App'x 57, 61 (3d Cir. 2016) for the proposition that an "attorney's recitation of client's unsworn statement constitutes double hearsay." AOB 17. But the layered hearsay cited in *Weinstein* was an attorney's declaration that purported to relay other attorneys' out-of-court accounts of yet another third party's

43

out-of-court statements. 658 F. App'x at 61. Nothing about *Weinstein* applies to Ms. Sacks' email.

Counsel also cite *Randazza v. Cox*, 2014 WL 1407378, at *3 (D. Nev. Apr. 10, 2014), for the proposition that "sufficient indicia of authentication [are] required for email communications." AOB 35. But the court in *Randazza* merely refused to admit certain emails attributed to defendant based on insufficient circumstantial evidence of their authenticity. 2014 WL 1407378, at *3. The court explained that "[a] document may be authenticated by personal knowledge 'by a witness who wrote it, signed it, used it, or saw others do so'" (*id.*), and Ms. Sacks has authenticated the December 27 email introduced by class counsel as a true and correct copy. ER-30. So *Randazza* gains class counsel nothing.

Moving away from authenticity and hearsay, class counsel next argue that MEF should have provided evidence of the aggregate redemption value through business records. AOB 12, 16-17, 35. That argument is just as faulty. For one thing, class counsel forfeited it. They now claim to have argued below that the aggregate redemption value "'was not in the manner or form commonly used' in MEF's

44

ordinary course of business," *id.* at 16, but in fact they objected only that Ms. Sacks' email "was not in the manner or form commonly used (i.e., letter or statement under oath from a duly authorized MEF representative) *to confirm client authorization*" for an attorney to speak on the client's behalf, ER-18 (emphasis added). And for another, the argument runs aground on the same shoals as class counsel's other contentions: there's zero support for it in the settlement agreement. Because neither MEF nor its counsel were required to submit anything in the form of "business records," class counsel's asides about the criteria for admissible business records (*see* AOB 12, 16-17, 35) are irrelevant.

Without any grounding in the settlement agreement, class counsel then turn to CAFA in an effort to imply such a business-records or admissible-evidence duty. They insist that this Court's decision in *In re HP Inkjet Printers Litigation*, 716 F.3d 1173 (9th Cir. 2013), required MEF to "demonstrat[e]" the aggregate redemption value through "competent admissible evidence" because, under CAFA, fee awards based in part on coupon relief "should be based on the *demonstrated* value of coupons actually redeemed by the class

45

members." *Id*. at 1182 (emphasis added) (citing S. Rep. 109-14, at 30 (2005)). But *HP Inkjet*, like the Senate Report it cites, merely stated that attorneys' fees based on CAFA coupons must be based on coupon *redemptions* rather than their nominal face value. *Id*.; *see* S. Rep. 109-14, at 30 ("[T]he fee award should be based on the demonstrated value of coupons actually redeemed by the class members. Thus, if a settlement agreement promises the issuance of $5 million in coupons to the putative class members, but only 1/5 of potential class members actually redeem the coupons at issue, then the lawyer's contingency fee should be based on a recovery of $1 million—not a recovery of $5 million."). The term "demonstrated" that class counsel emphasize, in other words, means "actual" rather than hypothetical or projected—and not, as they contend, substantiated according to unspecified evidentiary standards. AOB 17, 36.

MEF provided exactly what CAFA requires—the actual aggregate redemption value received by settlement class members. The only failure here was class counsel's failure to seek additional fees relating to those redeemed vouchers within the time limit required by the parties' agreement. The district court correctly determined

46

that nothing more was required of MEF by the settlement agreement and that nothing in the form of Ms. Sacks' email excused class counsel from the deadline.

### C. *De minimis* cash voucher redemptions by franchisees do not excuse class counsel's untimely fee motion.

Class counsel then assert, for the first time on appeal, that MEF failed to satisfy a "condition precedent" to the fee motion deadline—ensuring that no franchisees allowed class members to redeem vouchers for cash. AOB 18. This argument fails for three reasons.

*First*, class counsel forfeited the argument. Class counsel was not shy about loading its correspondence and briefing below with more and more arguments about why its motion was timely—and yet they never expressly argued that the $8,833.22 in vouchers redeemed by franchisees for cash itself excuses their late filing.

Class counsel below did refer to the cash redemptions as "highly troubling" (ER-20), but only in their reply, and only in the context that the redemptions supported their argument that MEF was required to provide the aggregate redemption value directly to class counsel in a different manner. ER-36. The closest class counsel

47

came to an argument below that the cash redemptions *themselves* excused the late filing are inscrutable footnote citations to *Taylor v. Johnston* (1975) 15 Cal.3d 130, 137-38, a decision about anticipatory breach of a horse-breeding contract, for the proposition that "a party's breach of bilateral settlement contract cannot be unilaterally excused by a party in breach." ER-20, -37. But "[a]rguments raised only in footnotes, or only on reply, are generally deemed waived." *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014).

Forfeiture arguments aren't always appealing, especially if they feel like a gotcha game. But this is not that sort of case. Class counsel have every incentive to timely seek fees to which they may be entitled. If the other party's nonperformance had prevented class counsel from pursuing fees, one would expect class counsel to have identified that failure promptly, repeatedly, and forcefully. That class counsel here did not do anything like that reveals the argument for what it is—another *post hoc* effort to rationalize what in straightforward terms would be called a blown deadline.

*Second*, even if class counsel had preserved this argument, it would be unavailing because the total avoidance of cash voucher

48

redemptions is not a condition precedent to the fee motion deadline. The cases class counsel cite make that point clear. As they acknowledge, "provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such a construction." *Helzel v. Superior Court*, 123 Cal. App. 3d 652, 663 (1981). The California Court of Appeal in *Helzel*, for instance, refused to find a condition precedent urged by real parties in interest where the parties to the agreement at issue "could have contracted for such a result expressly, but they did not do so." *Id*.

And there's the rub: class counsel cannot point to any language in the parties' settlement agreement expressly stating that the deadline for their fee motion was conditioned on franchisees' perfect compliance with the rule class counsel posit forbidding cash redemptions. The absence of express language dooms class counsel's condition-precedent argument from the start.

In fact, there's not even language in the agreement that *prohibits* franchisees from paying cash for vouchers, much less that makes compliance with that prohibition a necessary precondition to class counsel's fee motion. Class counsel cite the agreement's

49

statement that vouchers were not "*redeemable*" for cash—but that means only that class members had no *right* to redeem them for cash, not that franchisees were prohibited from choosing to give members cash in exchange for the satisfaction of the vouchers. If anything, the settlement agreement lends express support to franchisees' ability to offer cash: members have the right to sell their vouchers, which were "fully transferrable" (ER-151), to anyone willing to exchange cash for them, and franchisees are not excluded from that right.

Given the absence of any express prohibition of cash redemptions or provision conditioning the fee motion on compliance with such a prohibition, class counsel's proposed condition precedent is a far cry from the conditions precedent in the cases they cite. In *Schwab v. Bridge*, 27 Cal. App. 204 (1915), for instance, the court emphasized "that conditions precedent are not favored" and found one only because the guarantor had committed to pay a specified amount "*provided* the amount may be due and presented to [it] by" a set date. *Id.* at 205, 207 (emphasis added). Class counsel cannot point to any terms in the settlement agreement stating that their fee motion was due ten days after receiving the aggregate voucher

50

redemption value "provided" that franchisees did not allow any cash voucher redemptions, or any other language that could support a condition-precedent finding.

*Platt Pacific, Inc. v. Andelson*, 6 Cal. 4th 307 (1993), likewise does not help class counsel. In that case, the parties' agreement included an arbitration provision requiring arbitration to be invoked, if at all, by a specific date. That is, the condition precedent to submitting a claim to arbitration was a clearly and unambiguously stated deadline by which plaintiffs were required to do so. *Id*. at 319. The court determined that by failing to timely demand arbitration, the plaintiffs therefore "failed to satisfy the condition precedent to their right to arbitrate"—i.e., their own timely demand. *Id*. If anything, *Platt Pacific* supports MEF's argument that class counsel should be held to the deadline to which they agreed.

Recognizing that the settlement agreement does not include the express no-cash-redemptions condition precedent they now assert, class counsel rely on inapposite cases permitting *implied* conditions precedent. In *Estate of Jones*, 82 Cal. App. 5th 948 (2022), for instance, the court found that a contract obliging a party to pay

51

$3 million "out of the escrow from the sale" of specified real property necessarily implied that the sale of the property was a condition precedent. *Id.* at 954. As the court put it, the obliged party "cannot pay $3 million from the escrow of the sale—as required by the settlement agreement—if the sale has not yet happened." *Id*. (emphasis omitted). Similarly, in *De La Falaise v. Gaumont-British Picture Corp*., 39 Cal. App. 2d 461 (1940), the court found an implied condition precedent where an actress sued for breach of contract, alleging that she was prepared to "render services as a motion picture actress" in a 1936 production, but the defendant failed to perform the condition precedent of telling plaintiff the production's starting date. *Id.* at 463, 468.

Implied conditions precedent are rare because the law so strongly disfavors them. And this case presents nothing like the circumstances that led the courts in *Jones* and *De La Falaise* to find one. To the contrary, class counsel were in a position to seek their fees based on the redeemed value of the vouchers no matter what specific form those redemptions took.

*Third*, class counsel's condition-precedent argument would fail in any event because a contracting party's immaterial failures to perform do not excuse a counterparty's nonperformance. *Viacom Int'l, Inc. v. MGA Ent., Inc.*, 730 F. App'x 470, 470-71 (9th Cir. 2018). The alleged breach of the voucher redemption terms affected only $8,833.22 out of the $11 million in distributed vouchers and thus was *de minimis*. Class counsel appear to be arguing that any cash redemption—even one dollar—would relieve them, and by necessary extension plaintiffs and the settlement class, of all obligations under the settlement agreement. *See* AOB 24 (invoking the proposition that "material breach of one aspect of a contract generally constitutes a material breach of the whole contract"). But the *de minimis* cash redemptions did not harm plaintiffs, class members, or class counsel in any way. To the contrary, in their fee motion, class counsel sought fees based on the total redemption value reported, *including* the cash redemptions. 1-SER-17, -42, -47.

In short, conditions precedent are disfavored and must be clearly and unambiguously stated in a contract, and the only clearly stated condition precedent to class counsel's filing their fee motion

53

was MEF's obligation to provide them the aggregate voucher re-
demption value, as it did on December 27, 2023. Class counsel was
then obligated to file their fee motion within ten days. Because they
did not, the district court rightly denied the motion as untimely.

## III. The district court did not abuse its discretion by not addressing *de minimis* cash voucher redemptions.

The district court properly considered and rejected the argu-
ments class counsel presented in support of their untimely motion,
acting well within its discretion to hold class counsel to the deadline
they had negotiated and the court had improved. So on appeal, class
counsel complains that the district court should have taken some un-
specified action *sua sponte* in light of the *de minimis* cash redemp-
tions. But the court did not abuse its discretion by declining to dis-
turb the settlement simply because a few franchisees gave cash in
exchange for vouchers. Class counsel never asked for that relief, and
in any event the cash redemptions were neither prohibited by the
parties' agreement nor harmful to any class members.

Even now, it is not clear what class counsel wanted the district
court to do other than award them fees. They assert that "the district

court below was duly notified of MEF's breach of settlement (and Plaintiffs' request for a status conference so the court could address the same)." AOB 39. But in reality, they never explicitly requested a status conference from the district court, and certainly didn't file any motion affirmatively seeking any form of relief. Here's all they said: although their fee motion was "ripe for the [district court's] consideration," they would have "underst[ood]" if the court had been "so inclined" to "order the parties to participate in a status conference . . . to resolve any scheduling issues." ER-35. Class counsel are thus in the unenviable position of arguing that the district court abused its discretion by declining to do something that they never even asked for below.

None of the cases class counsel cite support their contention that the district court was required to act *sua sponte* to address the cash redemptions. They offer *In re Volkswagen "Clean Diesel" Marketing, Sales Practices & Products Liability Litigation*, 975 F.3d 770 (9th Cir. 2020), for instance, for the proposition that a district court that retains jurisdiction over a settlement agreement has discretion to determine whether a party had breached the agreement. AOB 18-

55

19. But this case doesn't concern the district court's *ability* to address an issue; the question is whether the court *had* to address the issue. And *Volkswagen* offers nothing on that point. There, companies that bought Volkswagens from an auction after the approval of a settlement brought a motion seeking to enforce what they claimed were Volkswagen's obligations, which is why the court saw fit to address the question of what the agreement required. *Id.* at 776-78. Similarly, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), simply confirmed that class counsel could seek relief if dissatisfied with the defendant's cooperation with a settlement agreement. *Id.* at 1027 (cited in AOB 41). Nothing in those cases suggests class counsel can sit back, decline to seek relief, and then later try to tank an adverse fee decision by claiming the district court should have intuited that some still-unspecified form of relief was appropriate.

*Arata v. Nu Skin International, Inc.*, 96 F.3d 1265 (9th Cir. 1996), is even less helpful to class counsel. There, the Court affirmed a district court's denial of defendant's motion to enforce a settlement agreement over which the district court previously retained jurisdiction. *Id.* at 1268. Rather than address the merits of the motion, the

56

district court divested itself of jurisdiction over the settlement agreement. *Id*. Far from holding that a district court *must* address any contention of noncompliance with a settlement agreement (no matter how immaterial or in what context that contention may be presented), *Arata* affirmed the district court's divestiture of jurisdiction and resulting refusal to consider the defendant's arguments about a supposed breach. *Id*. at 1268, 1270.

The Court in *Caudle v. Bristow Optical Co*., 224 F.3d 1014 (9th Cir. 2000) stated that the district court would have abused its discretion if it had wrongly concluded, as a matter of law, that it had no discretion to reduce a jury's punitive damages award. *Id*. at 1027-28. But *Caudle* does not help class counsel because the district court here did not decline to address the *de minimis* cash redemptions based on a mistaken view that it lacked all discretion—rather, the question was never posed to it by class counsel.

*Miller v. Hambrick*, 905 F.2d 259 (9th Cir. 1990), found an abuse of discretion where a district court failed to consider transferring a habeas petition to another court when required by statute to do so. *Id.* at 262. Because the district court here was not required by

57

statute (or contract) to address whatever unspecified "concerns" class counsel had with the *de minimis* cash redemptions, *Miller* is irrelevant.

Finally, class counsel cite *Fischel v. Equitable Life Assurance Society of the United States*, 307 F.3d 997, 1005 (9th Cir. 2002), for the undisputed proposition that a court abuses its discretion where "the record contains no evidence on which it rationally could have based its decision." AOB 19. *Fischel*, like class counsel's other cited authority, does not hold that a court abuses its discretion by declining to address *sua sponte* a vague allegation like class counsel's cash-redemption complaint made in the context of a late fee motion without any specific request for relief or explanation of supposed harm.

## CONCLUSION

The Court should affirm the district court's order.

Dated:  December 23, 2024          Respectfully submitted,

                                 /s/ Luanne Sacks
                                 Luanne Sacks

                                 *Counsel for Appellee Massage Envy Franchising, LLC*

58

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  24-4095

I am the attorney or self-represented party.

**This brief contains**  10,941  **words,** including  0  words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [        ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/ Luanne Sacks  **Date**  12/13/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                    *Rev. 12/01/22*